UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| PHYLLIS SUBLETT, *individually and as Estate representative*, | ) ) ) |
| Plaintiff, | ) No. 7:23-cv-65-REW-EBA ) |
| v. | ) OPINION & ORDER ) |
| WESTFIELD INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court addresses Defendant's Motion for Summary Judgment (DE 28) and Motion to Quash Jury Demand (DE 29). Both matters are fully briefed and ripe for review. *See* DEs 32, 33, 35, 36. For the following reasons, the Court **GRANTS** the motion for summary judgment, **DENIES as moot** the motion to quash, and **DISMISSES** Plaintiff's claims **with prejudice**.

I. **BACKGROUND**

A. **Factual Background**

The undisputed facts, taken largely from Defendant's memo in support of summary judgment (DE 28-1),[1] are as follows:

Plaintiff Phyllis Sublett owns a home in the town of Oil Springs, Kentucky. *See* DE 28-5 (Policy Declarations); DE 1-1 at 12–20 (Warranty Deed). At all relevant times, Plaintiff and her

---

[1] Plaintiff's responses, filed at DE 32 and DE 33, are largely devoid of any facts or citations to the record. Thus, save for the few areas that Plaintiff does address, the Court otherwise adopts Westfield's recitation of the facts as uncontested and undisputed. *See Cont'l Refin. Co., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, 350 F. Supp. 3d 601, 609 (E.D. Ky. 2018) ("[T]he Court need not, outside the scope of party advocacy, 'search the entire record to establish that it is bereft of a genuine dispute of material fact'; judges, after all, 'are not like pigs, hunting for truffles that might be buried in the record.'" (quoting *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011))).

husband, Calvin Keith Sublett,[2] held a Standard Flood Insurance Policy (SFIP) from Defendant Westfield Insurance Company, under which Westfield provided flood coverage for Plaintiff's home and its contents. *See* DE 28-4 (SFIP Form). An SFIP is a federally subsidized flood insurance plan offered through the FEMA-administered National Flood Insurance Program (NFIP) and its authorizing statute, the National Flood Insurance Act (NFIA). The terms of all SFIPs are uniformly governed by 44 C.F.R. § 61.4. Specifically, both the CFR and Plaintiff's SFIP required the following in the event of flood-related loss or damage to the covered property:

> Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the insured property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damaged personal property described . . . above.

44 C.F.R. pt. 61, app. A(2), art. VII(G)(4); DE 28-4 art. VII(G)(4), at 21.

On July 28, 2022, flooding caused damage to the Sublett home. Plaintiff promptly filed a claim with Westfield, who in turn assigned the matter "to an independent adjuster pursuant to Article VII(G)(7) of the SFIP." *See* DE 28-2 ¶ 16, at 4 (Robert Butler Declaration); DE 28-4 at 21.[3] Based

---

[2] Calvin Sublett was initially also a plaintiff in this action prior to his passing in November 2023, at which point he was substituted for Phyllis Sublett in both her individual and representative capacity. *See* DE 22 (Substitution Order). Phyllis Sublett, in both capacities, is now the lone plaintiff.

[3] Article VII(G)(7) states in full: "The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it." *Id.*

2

on the claim-submission date and pursuant to Article VII(G), Plaintiff had until September 26, 2022 (*i.e.*, 60 days) to submit a properly executed Proof of Loss (POL) statement.

The independent adjuster inspected the property on July 31, 2022, and concluded that Plaintiff's home "was flooded with 24 [inches] of water on the exterior of the [house] and 16 [inches] of water on the interior of the basement at the entrance. The main living area did not sustain any water intrusion." DE 28-6 at 1 (Colonial Claims Report). Based on these observations, on August 8, 2022, the adjuster provided Plaintiff with a Proof of Loss statement itemizing $6,189.05 in covered damages. *See* DE 28-7 (Net Claim Summary); DE 28-8 (Proof of Loss); DE 28-6 at 3. This estimate found that portions of Plaintiff's claim (namely, alleged structural damage to the interior of her home) did not appear to be covered by the SFIP, and it further informed Plaintiff as follows:

> Dispute resolution – If you disagree with the estimate, you should complete your own proof of loss form for the total amount (undisputed amount plus any additional amount) you are requesting. You can obtain a proof of loss through your handling adjuster or through the FEMA document center at [URL,] then, send the signed proof of loss form with documentation to support the additional amount you are requesting.

DE 28-7 at 2.

Plaintiff initially refused to sign the adjuster's prepared POL because she believed it failed to properly account for structural damage to the home. *See* DE 28-6 at 4 (adjuster noting that "[Plaintiff] wanted the suspected structural damages addressed prior to signing the [POL]"). According to Plaintiff, the adjuster informed her that he did not have the expertise to inspect for potential structural damage, and further allegedly "led [] Plaintiff to believe that she no longer needed to take independent action with regard to the Proof of Loss given that [the adjuster] had determined and documented the damage." DE 32 at 3; *see* DE 28-14 at 79–80 (Phyllis Sublett Deposition).

Subsequent to these conversations, Plaintiff retained Yeiser Structural, an engineering firm, to conduct an additional inspection of the home. *See* DE 28-6 at 3. On September 20, 2022, Plaintiff—who to that point had still not signed the August 8 Proof of Loss—provided the adjuster

3

with Yeiser's inspection report. *See* DE 28-9 (Yeiser Report); DE 28-6 at 4. The report, which did not provide any estimate as to the amount of damages, found that cracks in the home's interior finishes and sloping floors were caused, in part, by moisture damage. *See* DE 28-9 at 1. Upon receiving this report, the adjuster promptly submitted to Westfield an "engineer request with the insured's [Yeiser] report and photos." DE 28-6 at 4. The following afternoon (September 21), the adjuster met with Plaintiff, who again stated that "[s]he was concerned with signing the [Proof of Loss] and not being able to file a later supplemental claim due to possible structure damage." *Id.* Despite these apparent concerns, Plaintiff ultimately signed the $6,189.05 POL on September 21, 2022. *See* DE 28-8.

Westfield, after reviewing the adjuster's submissions (including the Yeiser Report and signed POL), formally notified Plaintiff on September 22 that it would pay out $6,189.05 on her enumerated claim. *See* DE 28-10 (9/22/22 Letter). The correspondence further denied the portion of Plaintiff's claim seeking coverage for damage to the home's floor joists, vapor barrier, and personal property. *See id.* at 1. It also stated: "Accepting payment does not waive any of your rights to seek further payments under your policy. You may request additional payments by submitting a Proof of Loss. Please refer to the Flood Claims Handbook provided during your initial inspection (FEMA Document F-687), section 2.4 for additional information." *Id.* at 1–2.

On September 24, 2022, reacting to the Yeiser Report and the adjuster's engineer request, Westfield retained Keystone Experts & Engineers "[t]o determine the extent of structural damage [to Plaintiff's home] due to flooding." *See* DE 28-12 at 11 (Keystone Report). Keystone submitted a report on October 7, 2022, finding that "[n]o structural damage to the residence was caused by the [] flood." *Id.* at 4. As a result, Westfield issued another partial denial of Plaintiff's claim on October 11, 2022. *See* DE 28-13 (10/11/22 Letter). The October letter provided the same information regarding potential additional payment requests as the September correspondence. *See id.* at 1–2.

4

Finally, nearly a year later and well after litigation in this case had commenced, Plaintiff first disclosed a damages estimate from her retained litigation expert, Top Notch Restoration. *See* DE 32-3 (Top Notch Estimate); DE 12-2 (listing as expert report). The estimate, which was not sworn or signed by Plaintiff, calculated an additional $53,379.99 in covered damages. *See id.* By Plaintiff's own admission, the August 8 POL statement was the only signed, sworn, and timely filed Proof of Loss submitted for the July 28 flood. *See* DE 28-14 at 77, 81–82.

### B. Procedural History

On July 11, 2023, Plaintiff filed suit against Westfield in Johnson Circuit Court. *See* DE 1-1 at 3–11 (Complaint). The Complaint alleges that Westfield breached the terms of the SFIP by refusing to pay more than $6,189.05 on Plaintiff's July 28, 2022 claim. *See id.* ¶¶ 9–12, at 6. The Complaint also alleges that Westfield breached an implied covenant of good faith & fair dealing, *see id.* ¶¶ 14–15, and violated Kentucky Revised Statutes (KRS) §§ 304.12-230 (Unfair Claims Settlement Practice Act), 304.12-235 (Timely Payment of Claims), and 367.170 (Consumer Protection Act). *See id.* ¶¶ 16–17, 19.

In total, Plaintiff seeks $53,379.99 for Westfield's alleged breach of contract. *See* DE 28-14 at 74–75 (confirming Top Notch estimate is the full amount of contractual damages sought). Plaintiff also seeks attorney's fees, costs, penalties, damages for mental/emotional suffering, and punitive damages under various Kentucky statutes. *See* DE 1-1 ¶¶ 13–25, at 6–10.

Westfield removed the case to this Court on August 10, 2023, based on original and exclusive federal question jurisdiction under 42 U.S.C. § 4072 and 28 U.S.C. § 1331. *See* DE 1 (Notice of Removal). Now before the Court is Westfield's Motion for Summary Judgment, *see* DE 28; DE 28-1 (Memo in Support), and Motion to Quash Jury Demand. *See* DE 29; DE 29-1 (Memo in Support). Plaintiff, not without lengthy and unexcused delay, eventually filed self-styled "objections" (construed here as responses) to both motions. *See* DE 32 (MSJ Response); DE 33 (Quash

Response).  Westfield then filed timely replies.  *See* DE 36 (MSJ Reply); DE 35 (Quash Reply). Both motions are thus ripe for review.

## II. SUMMARY JUDGMENT

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[4]  In determining whether a genuine dispute exists, the Court considers all facts and draws all reasonable inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Avantax Wealth Mgmt., Inc. v. Marriott Hotel Servs., Inc.*, 108 F.4th 407, 414 (6th Cir. 2024) (citation omitted). Furthermore, the Court may not "weigh evidence [or] determine the truth of the matter" at the summary judgment stage.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).  If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial."  *Id.*  "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."  *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical.  *See*

---

[4] Plaintiff, despite raising no challenge to the Court's federal question jurisdiction, inexplicably briefs this as a case to be decided under Kentucky substantive and procedural law. *See generally* DE 32; DE 33. Thus, Plaintiff advocates for application of the Kentucky summary judgment standard, as put forth in the legendary *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991). *See* DE 32 at 4–5. While the Court addresses Plaintiff's misguided application of state substantive law later in the Opinion, *see infra* Section II.B.1, in any event, the federal summary judgment standard undoubtedly applies here. *See, e.g.*, *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 n.4 (6th Cir. 2013) (confirming that even where state substantive law applies, the federal summary judgment standard still governs). Accordingly, the Court disregards the final paragraph of DE 32 at 4–5. Federal law permeates all aspects of this case.

*Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. Fed. Deposit Ins. Corp.*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## B. Analysis

Westfield's arguments can be broken into two categories. First, it contends that the Court must dismiss the breach-of-contract policy claim because Plaintiff failed to submit a compliant Proof of Loss statement for her alleged damages. Second, Westfield argues that the remaining non-contractual claims are preempted and barred by federal law. The Court addresses each below.

### 1. Federal Preemption

Westfield contends that federal law preempts Plaintiff's "extra-contractual claims for violations of the [KRS] and other state-law based extra-contractual claims[] seeking emotional and mental [] pain, suffering, and distress, bad faith damage, punitive damage, attorney fees, pre-judgment, and post-judgment interest[.]" DE 28-1 at 19. In response, Plaintiff generally claims that "federal law related to FEMA [] has absolutely nothing to do with the contractual obligations [Westfield] has to the Plaintiff." DE 32 at 2. Thus, it seems to be Plaintiff's view that federal law has *no* application to the claims at hand, whether they are contractual or non-contractual in nature. Setting aside the somewhat puzzling nature of this position (despite making this proclamation and relying exclusively on Kentucky caselaw, Plaintiff does not challenge the Court's federal question jurisdiction), the Court sees fit to analyze the applicability of substantive federal law to both sets of claims, contractual and extra-contractual alike.

7

### a. Contractual Claims

The Court begins with some background on the role of private insurers (such as Westfield) within the NFIP scheme:

> The Flood Insurance Administration, a component of the Federal Emergency Management Administration ("FEMA"), administers the National Flood Insurance Program pursuant to the authority granted by 42 U.S.C. § 4081(a). FEMA created the "Write Your Own" [WYO] program in 1983. 44 C.F.R. §§ 62.23–.24. Under this program, private insurance companies, such as [defendant], issue [SFIPs] as fiscal agents of the government. 44 C.F.R. § 62.23. FEMA has the sole authority to prescribe the terms and conditions of the [SFIP], and the [SFIP] must be issued without alteration (except by the written consent of the Federal Insurance Administrator). 44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d).

*Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516, 519 (6th Cir. 2008) (quoting *Neuser v. Hocker*, 246 F.3d 508, 509–10 (6th Cir. 2001)). Here, the undisputed proof shows that, just like the defendant in *Evanoff*, Westfield is a private insurance company that issued Plaintiff's SFIP pursuant to FEMA's WYO program. *See* DE 28-2 ¶¶ 2–13, at 2–4; DE 28-3 (WYO Arrangement).

The Sixth Circuit has held that "the [NFIA] *completely preempts state law* because it explicitly confers 'original exclusive jurisdiction' on the federal district courts" under 42 U.S.C. § 4072. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 564 (6th Cir. 2007) (emphasis added) (quoting *Gibson v. Am. Bankers Ins. Co.*, 289 F.2d 943, 947 (6th Cir. 2002)); *see Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) ("[F]ederal common and statutory law preempts state principles of contract law for purposes of the interpretation of NFIP policies.").

This conferral of preemptive and exclusive federal jurisdiction applies regardless of whether a suit is brought against FEMA directly or against a WYO carrier:

> [A] suit against a WYO company is the functional equivalent of a suit against FEMA [under the NFIA].
> . . .
> Because FEMA bears the risk and financial responsibility regardless of whether the lawsuit formally names FEMA or a WYO company as the defendant, it would make little sense for Congress to have intended to create original exclusive jurisdiction for suits against FEMA but not for suits in which FEMA's fiscal agent is the nominal

8

> defendant.
>
> We [thus] . . . hold that § 4072 provides exclusive subject matter jurisdiction over suits against a WYO insurance company arising out of a disputed flood insurance claim.

*Gibson*, 289 F.3d at 947 (block formatting altered) (quoting *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166–67 (3d Cir. 1998)).

Plaintiff here alleges that Westfield—a WYO carrier—breached the terms of the SFIP. Thus, far from having "absolutely nothing to do with" this case, federal law undoubtedly and exclusively governs Plaintiff's contractual claim. Accordingly, the Court will apply substantive federal law (and ignore Kentucky contract law) in its analysis of Plaintiff's policy-based claim. *See infra* Section II.B.2.

### b. Extra-Contractual Claims

Similarly, Plaintiff's extra-contractual state law claims are preempted and therefore doomed. Under the Supremacy Clause of the Constitution, "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wis. Pub. Intervenor v. Mortier*, 111 S. Ct. 2476, 2481 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)); *see* U.S. CONST. art. VI, cl. 2. Thus, "[w]here a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 113 S. Ct. 1732, 1737 (1993). In any preemption analysis, "[t]he purpose of Congress is the ultimate touchstone." *Altria Grp., Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (quoting *Medtronic, Inc. v. Lohr*, 116 S. Ct. 2240, 2250 (1996)).

In *Gibson*, the Sixth Circuit directly addressed whether the NFIA preempts non-contractual state laws such as KRS § 304.12-230:

> [Plaintiffs bring] claims under the Kentucky Unfair Claims Settlement Statute, Ky. Rev. Stat. § 304.12-230 . . . .
> . . .
> [M]ost courts have consistently found that NFIA preempts state law claims that are based on the handling and disposition of SFIP claims. *See Novikov v. Allstate Ins. Co.*,

9

> No. Civ. S–01–0305 WBS/G, 2001 WL 880852 (E.D. Cal. July 11, 2001) (state law claims of breach of contract, breach of the covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress under an SFIP were preempted by NFIA because applicability of state law would undermine a nationally unified program of flood insurance); *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 129 F. Supp. 2d 1024 (S.D. Tex. 2001) (claims of breach of duty of good faith and fair dealing and violations of Texas law are preempted by NFIA); *Neill v. State Farm Fire & Cas. Co.*, 159 F. Supp. 2d 770, (E.D. Pa. 2000) (ex-contractual causes related to the insurance company's claims handling under state law was preempted). Some cases have distinguished between state law claims based on the handling of an SFIP claim and those that are related to the procurement of the policy. *See Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 513, 522–23 (D.N.J. 2000) (state law claims were nothing more than disagreement with disposition of SFIP claim and are barred by field preemption under NFIA) . . . .
>
> In this case, plaintiffs claim defendant violated the Kentucky statute by failing to act promptly on communications, refusing to pay the claim, failing to affirm coverage, and not attempting a good faith settlement. All of these claims are in essence over the disposition of the SFIP claim. They are all based on defendant's handling and denial of coverage under the SFIP. Congress and FEMA have regulated the claims adjustment process and judicial review of coverage claims under flood insurance policies. Uniformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject. If plaintiffs prevail, their coverage claims will be paid with federal funds. The defense costs incurred by defendant are also covered by federal funds. *See* 44 C.F.R. § 62.23(i)(6). It is unnecessary for us to decide whether policy procurement type state law claims are preempted by NFIA. The claims asserted by plaintiffs clearly are preempted by NFIA and are within the exclusive jurisdiction of the federal courts.

*Gibson*, 289 F.3d at 949–50.

Here, Plaintiff's extra-contractual allegations relate exclusively to the disposition and/or handling of the July 28 flood claim, as opposed to procurement of the SFIP itself: The good faith and fair dealing claim is predicated on Westfield's alleged failure to "effectuate a fair and reasonable settlement of [Plaintiff's] claim." *See* DE 1-1 ¶¶ 14–15, at 7. The alleged KRS § 304.12-230 violation rests solely on Westfield's handling and adjustment of the July 28 claim. *See id.* ¶ 16, at 7–8. The KRS § 304.12-235 violation turns on Westfield's alleged failure "to settle [Plaintiff's] claims within thirty (30) days of being provided adequate information to adjust the claim." *Id.* ¶ 17, at 8. And the KRS § 367.170 claim alleges that Westfield's handling of the July 28 claim constitutes

"unfair, false, misleading, and deceptive acts or practices." *Id.* ¶ 19, at 8.

In short, all of Plaintiff's state theories revolve around the disposition of the July 28 claim, not the procurement of the SFIP itself. Accordingly, the Court **DISMISSES** all extra-contractual claims as preempted by federal law.

### 2. Proof of Loss

Thus, Plaintiff is left only with her SFIP breach of contract claim. Westfield argues that "Plaintiff failed to timely submit a proper Proof of Loss in support of her claim for the July 28, 2022 flood loss . . . as required by Article VII(G)(4) of the SFIP. As a result, Plaintiff failed to comply with all conditions precedent prior to filing this lawsuit as required by Article VII(O) of the SFIP, and therefore all of Plaintiff's claims against Westfield must be dismissed." DE 28-1 at 14.[5] The Court agrees.

"If payment is to be made on an insurance claim brought under [an SFIP], the claimant *must* file a proof of loss form within 60 days of the loss." *Neuser*, 246 F.3d at 510 (emphasis added). Courts "have consistently held that [an SFIP's] proof of loss requirement is to be strictly enforced." *Evanoff*, 534 F.3d at 521 (quoting *Neuser*, 246 F.3d at 511). This Circuit thus "demands strict compliance with the proof of loss requirement under the SFIP, including the 60 day limitation period." *Oaks v. Allstate Ins. Co.*, No. 7:05-cv-191-REW, 2006 WL 3328179, at *4 (E.D. Ky. Nov. 14, 2006) (quoting *Neuser*, 246 F.3d at 511–12); *see Jumptastics, LLC v. Auto-Owners Ins. Co.*, No. 6:21-cv-172-CHB, 2023 WL 6410712, at *6 (E.D. Ky. Sept. 29, 2023) ("Plaintiffs' breach of contract claim against Auto-Owners rises or falls simply on whether they timely and correctly submitted a proof of loss, as required by the SFIP policy.").

---

[5] Article VII(O) states, in relevant part: "You may not sue [Westfield] to recover money under this policy unless you have complied with all the requirements of the policy. . . . This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under this policy." DE 28-4 at 24.

11

Here, the SFIP clearly required Plaintiff to submit a signed and sworn POL statement, describing the nature and detailing the amount of the casualty, within 60 days after loss. *See* DE 28-4 at 21; 44 C.F.R. pt. 61, app. A(2), art. VII(G)(4). The undisputed proof shows that Plaintiff submitted only one such POL for the July 28 claim, in the amount of $6,189.05. *See* DE 28-8; 28-14 at 77. Westfield paid that claim, *see* DE 28-11 (Check Payment), and Plaintiff accepted payment. *See* DE 28-14 at 66. At no point after that did Plaintiff submit a compliant POL or seek a timing waiver from the lone authority with such power, the Federal Insurance Administrator (FIA). Indeed, she revealed such harms only via counsel and her expert in this case, mid-litigation. Thus, Plaintiff failed to provide a proper POL statement (per the terms of the SFIP) for the additional $53,379.99 in damages alleged here. Given this Circuit's strict adherence to compliance with all Proof of Loss requirements,[6] Plaintiff thus forfeited the right to claim these damages under the SFIP.

In response, Plaintiff offers a few cursory and Kentucky-centric attempts to explain or otherwise justify her failure to submit a POL. These attempts fail.

### a. Substantial Compliance

First, Plaintiff argues that "Kentucky recognizes the doctrine of substantial compliance with regard to duties under insurance contracts," and that as a result, "[a]ny alleged noncompliance with a condition in the [SFIP] must be accompanied by a showing that [Westfield] 'sustained prejudice.'" DE 32 at 4 (quoting *Neward Ins. Co. v. Ezell*, 520 S.W.2d 318, 321 (Ky. 1975)). Applying this purported standard, Plaintiff theorizes that Westfield did not suffer actual prejudice via the lack of a POL because Plaintiff "disclosed damages to her real property in the amount of $53,379.99 as estimated by her retained expert" and "fully cooperated with Westfield to furnish information regarding the claim and the damages to her property by agreeing to meet with an adjuster and by

---

[6] And as Westfield argues, the lapse also necessarily signals failure to adhere to pre-suit conditions precedent, under art. VII(O).

12

allowing him to enter her property and evaluate the damages, which satisfied Westfield to the extent that it even made an offer of settlement." *Id.*

Plaintiff's reliance on Kentucky law is incorrect for the reasons discussed above, *see supra* Section II.B.1.a, and indeed, the Sixth Circuit in *Evanoff* addressed an identical "substantial compliance" argument. In that case, the plaintiff submitted a POL statement that "was not notarized or [] sworn" but otherwise provided "each and every item required by the SFIP, including a letter that contained his signature." *Evanoff*, 534 F.3d at 520 (internal quotation marks omitted). The Sixth Circuit nonetheless found the statement deficient under the demanding terms of the SFIP:

> On this issue, we find the Eighth Circuit's opinion in [*Mancini v. Redland Ins. Co.*, 248 F.3d 729 (8th Cir. 2001)] to be on point and persuasive. In *Mancini*, . . . the plaintiffs forwarded [a POL] form—unsigned and without notarization—to the defendant insurer. *Id.* at 732. The insurer refused to pay the plaintiffs' claim . . . . After a bench trial, the district court found for the plaintiffs, reasoning that by submitting the proof of loss forms to the defendant, along with an accompanying letter bearing their signature, the plaintiffs had substantially complied with the requirements of the SFIP to provide a signed and sworn proof of loss. *Id.* at 733.
>
> On appeal, the Court of Appeals for the Eighth Circuit reversed [and] . . . explained that due to the "special nature" of the SFIP—that is, the federal government's role in subsidizing the flood insurance plan—the plaintiffs were required to "show ***actual and complete compliance with this requirement: it is not sufficient to show that they substantially complied or that the insurer suffered no prejudice***." *Id.* at 734 (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S. Ct. 1, 92 L. Ed. 10 (1947), for the proposition that "'the duty of all courts to observe the conditions defined by Congress for charging the public treasury' imposes on citizens a corresponding duty to 'turn square corners when they deal with the Government'"). The court was not persuaded by the plaintiffs' claim that their signature on the accompanying letter was sufficient, holding that the plaintiffs "were required to do more than merely submit a set of figures together with a signed statement not rejecting or nullifying those figures. They had to submit a signed statement as to the amount claimed under the policy. They simply did not do so." *Id.* at 734–35.
> . . .
> Although *Mancini* is not binding on us, we agree with and adopt its reasoning. As we have noted previously, "federal courts have consistently held that the proof of loss requirement is to be strictly enforced." *Neuser,* 246 F.3d at 511. There is no evidence in the record that Evanoff returned a signed and sworn proof of loss form to Standard Fire before the expiration of the 60–day period. Moreover, we think it unwise to accept plaintiff's argument that the possibility of criminal penalties under 18 U.S.C. § 1001 renders any signed statement submitted to the insurer "sworn"; to hold

13

> otherwise would effectively delete FEMA's requirement in 44 C.F.R. § 61, App. A(2)(J)(4) that a proof of loss statement must be "signed and sworn." As we are required to interpret the SFIP at issue strictly, ***we cannot accept Evanoff's claim that he substantially complied with the terms of the policy***.

*Evanoff*, 534 F.3d at 520–21 (emphases added).

Applied here, the Top Notch Report, again, a litigation disclosure, was unsworn, unsigned, and submitted nearly a year after the 60-day deadline's expiration. Clearly, the Court cannot accept it as a proper Proof of Loss statement under the requirements of the SFIP. With no other document meeting the SFIP's POL requirements (the Yeiser Report provided no loss estimate and was likewise unsworn and unsigned), Plaintiff's "substantial compliance" argument, pertaining to the claims advanced in this action, must fail.

### b. Waiver/Estoppel

Plaintiff also argues that Westfield waived and/or is estopped as to the 60-day Proof of Loss deadline. Specifically, Plaintiff claims Westfield "gave the impression that [it] would assist the Plaintiff in filing a Proof of Loss and also led her to believe that the burden of completing that obligation had shifted to Westfield." DE 32 at 3. Plaintiff attaches a letter in which Westfield allegedly "stat[ed] that it would attempt to obtain a waiver of the sixty (60) day provision." *Id.* at 2; *see* DE 32-1 (6/22/23 Letter).

As Westfield points out, Plaintiff's reliance on the DE 32-1 letter is sorely misplaced, as that correspondence relates to an entirely different claim stemming from flooding with a loss date on February 16, 2023. *See* DE 32-1 at 1. Thus, it is irrelevant to (and cannot possibly evince waiver of) the July 28, 2022 claim at issue here. The Court dimly views lawyer reliance on evidence inapt to the dispute.

Next, the Court notes that Westfield could not have waived the 60-day proof of loss requirement. Rather, the waiver of any term under the SFIP can be accomplished *only* through the

14

express written consent of the FIA. *See* 44 C.F.R. § 61.13(d); *see also Bruinsma v. State Farm Fire & Cas. Co.*, 410 F. Supp. 2d 628, 636 (W.D. Mich. 2006) (collecting cases and stating: "The vast majority of appellate courts who have addressed the issue have determined that a WYO carrier's ability to waive compliance with the proof-of-loss requirement is expressly subject to FEMA regulations and procedures. . . . In the present case, . . . State Farm had no authority under FEMA regulations to waive strict compliance with the proof-of-loss requirement."); *Oaks*, 2006 WL 3328179, at *5 n.10 (finding same). Thus, waiver by Westfield of the 60-day requirement is an impossibility here.

Plaintiff likewise cannot argue that Westfield's conduct creates an estoppel. In *Office of Personnel Management v. Richmond*, 110 S. Ct. 2465 (1990), the Supreme Court held that the government cannot be estopped by virtue of a government employee's incorrect statements or conduct in a case where the claimant is seeking public funds.[7] "Since the [*Richmond*] decision, no federal court has ever upheld a claim of equitable estoppel by an insured seeking an award of public funds under a Standard Flood Insurance Policy." *Bruinsma*, 410 F. Supp. 2d at 635. As a result, the court in *Bruinsma* expressly rejected the argument that a WYO insurance company can be estopped from relying on the 60-day POL requirement. *See id.* at 634–35; *see also Oaks*, 2006 WL 3328179, at *5 ("Plaintiff cannot argue to estop [WYO carrier] from raising the proof of loss defense."); *Foster v. FEMA*, No. 3:12-cv-691, 2013 WL 3166166, at *6 (W.D. Ky. June 20, 2013) ("When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation of power granted exclusively to Congress by the Constitution." (alteration cleaned up) (quoting *Gowland*, 143 F.3d at 955)). Accordingly, the Court

---

[7] Participating WYO insurers are considered "fiscal agents" of the federal government under the NFIP statutory scheme. *See* 42 U.S.C. § 4071(a)(1). Furthermore, payments made pursuant to a claim under the SFIP are considered a "direct charge on the public treasury." *See Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir. 1998). As such, the Supreme Court's holding in *Richmond* is directly applicable to this case, which involves the potential payment of federal funds.

finds that Plaintiff cannot argue to estop Westfield from raising the proof of loss defense.

In sum, courts in this Circuit have already considered and rejected every excuse Plaintiff has to offer. *See Jumptastics*, 2023 WL 6410712, at *5 ("We find that the theories of substantial compliance, waiver, and equitable estoppel are inapplicable to [Proof of Loss requirements]." (quoting *Gowland*, 143 F.3d at 955)). The present situation is thus not a complex one: Plaintiff failed to submit a timely and compliant Proof of Loss statement; therefore, because the Court must strictly construe POL requirements, her contractual claim must fail.[8] The Court accordingly **DISMISSES** Plaintiff's breach of contract claim.

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS** DE 28 (Motion for Summary Judgment) and **DISMISSES** Plaintiff's Complaint **with prejudice**.

2. The Court **DENIES as moot** DE 29 (Motion to Quash Jury Demand).

3. The Court will enter a separate judgment.

This the 21st day of May, 2025.



Signed By:
*Robert E. Wier*
**United States District Judge**

---

[8] The noncompliance extends to a) no timely and complete POL, which b) prevents fulfillment of all conditions precedent to a proper suit. Westfield argues both frailties, under express SFIP provisions, and both plainly exist to prevent any recovery here.